UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| KIANI TELLES, | § | |
| ELIZABETH CHASTAIN, and | § | |
| CRYSTINE KISTNER, | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 7:17-CV-00083-RAJ |
| V. | § | |
| | § | |
| MIDLAND COLLEGE | § | |
| *Defendant.* | § | |

**AMENDED JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Kiani Telles, Elizabeth Chastain, and Crystine Kistner ("Plaintiffs") and Defendant Midland College (jointly, the "Parties") file this Amended Joint Motion for Final Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(e) and would show as follows:

## I.       INTRODUCTION

Tommy Ramos was the longtime softball coach at Midland College.  Ramos filed this lawsuit on April 27, 2017.  Defendant filed a motion to dismiss challenging Ramos's standing to bring the Title IX claim, and it was eventually granted. [Doc. #12].  In the meantime, Ramos had filed an amended complaint (the "Complaint") adding three students: Kiani Telles, Elizabeth Chastain, and Crystine Kistner, students and softball players at Midland College. [Doc. #6].

The Complaint alleged that Defendant violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq.* ("Title IX"), and the regulations and policies promulgated thereunder, *see* 34 C.F.R. § 106 *et. seq.*  As a recipient of federal funds, the complaint states that the defendant violates its Title IX obligations due to its alleged discrimination on the basis of sex as it relates to the softball and baseball teams.  The complaint asserts a variety of disparities are

present between the softball and baseball teams, including: game day facilities, practice facilities, locker rooms, travel amenities, budgeting, and support staff.

Early in the litigation, Plaintiffs' counsel inquired about Defendant's position regarding a possible motion for class certification. Defendant initially opposed the concept, but prior to the mediation, determined it was the superior method of adjudicating the claims.

## II.    SETTLEMENT TERMS

After months of litigation, the parties agreed to mediate the dispute. The parties engaged in mediation on January 15, 2018. Debbie Osgood, Esq., served as mediator to facilitate the Parties' agreement. Ms. Osgood is a partner in the law firm of Hogan, Marren, Babbo & Rose, Ltd. She previously served for 25 years with the U.S. Department of Education, Office for Civil Rights, most recently as a National Enforcement Director. All three named Plaintiffs attended the mediation with their counsel, and reached a tentative agreement, with settlement negotiations continuing thereafter. On January 30, 2018, a final agreement was executed. *See* Exhibit 1 ("Settlement Agreement"). The parties reached the settlement terms described therein. Because the Parties had determined class certification was superior, the parties agreed in the Settlement Agreement that they would jointly seek class certification.

## III.    CLASS CERTIFICATION AND NOTICE

On April 30, 2018, the Court preliminarily certified the Parties' proposed settlement class and preliminarily approved the Parties' proposed Settlement Agreement and approved the Parties' proposed manner of notice in regard to distribution of Class Notice to the Settlement Agreement. (Exhibit 2) [Doc. #23].

On June 29, 2018, the Court approved the Parties' Amended Proposed Class Notice. (Exhibit 3) [Doc. #25]. On July 18, 2018, a copy of the Notice was emailed to thirty class members. (Exhibit 4, Affidavit of Julie Vickery). On July 19, 2018, a copy of the Notice was

sent by first class mail via the United States Postal Service to the same class members. (*Id.*). One email was returned as "undeliverable"; none of the Notices were returned by mail. (*Id.*).

The August 16, 2018 deadline for objecting to the Settlement and requesting exclusion from the Settlement Class has passed with no objections or requests for exclusion submitted.

A fairness hearing was held before the Honorable David Counts on August 30, 2018 at 3:00 p.m., at the United States District Court for the Western District of Texas, Midland/Odessa Division, 200 E. Wall, Midland, Texas.

For the reasons set forth below, the Parties, on behalf of themselves and the Settlement Class, request that, following the hearing, the Court approve the Settlement as fair, reasonable and adequate, and enter an order dismissing the case with prejudice.

## IV.    ARGUMENT

### A.    The Court Should Approve the Settlement.

Judicial policy favors settlements, particularly in complex class or representative actions. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (citations omitted)).  The court has full discretion of whether to approve the settlement except that the court must first "find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties," *Id.* at 1330; *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

The court must follow a two-step process to determine the settlement's fairness: (1) preliminary approval and (2) final approval after notice has been provided to the class and a "fairness hearing" has been held. *See McNamara v. Bre-X Minerals, Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). The court must consider at the final stage the following six factors (the "*Reed* factors*") before approving a settlement:

(1)  the assurance that there is no fraud or collusion behind the settlement;

(2)  the stage of proceedings and the amount of discovery completed;

(3)  the probability of success on the merits;

(4)  the range of possible recovery;

(5)  the complexity, expense and likely duration of the litigation; and

(6)  the opinions of class counsel, class representatives and absent class members.

*Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

**1.     The Settlement satisfies the *Reed* factors.**

The Settlement Agreement reached by the Parties satisfies the *Reed* factors. Thus, this Court should approve the Settlement Agreement.

**a.     The Lack of Collusion Favors Approval**

There has been no collusion in the settlement of this action. Neither parties' counsel has a conflict of interest concerning settlement.  "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also, Cotton*, 559 F.2d at 1330 ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").  Although the parties did not engage in extensive formal discovery, informal discovery was conducted, and settlement negotiations were conducted at arm's length through a mediator specializing in Title IX claims. Thus, all parties had a sufficient understanding of the facts and the relative strength of the legal claims.

**b.     The Current Stage of the Litigation Favors Approval**

Settlement is favorable because of the current stage of the proceedings.  Settlement should be approved when parties have a "full understanding of the legal and factual issues surrounding this case" *See  Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  While

discovery is not a prerequisite to settlement approval, the parties have engaged in informal discovery for months. *See Cotton*, 559 F.2d at 1332 ("[T]he lack of [formal discovery] does not compel the conclusion that insufficient discovery was conducted."); *In re Corrugated Containers Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[W]e are not compelled to hold that formal discovery was a necessary ticket to the bargaining table..." (internal quotation marks omitted)). The parties are proposing settlement after a sufficient amount of time to assess the overall strength of the claims and the probability of outcomes without settlement and before they would begin to incur significant additional litigation fees and costs related to preparing this case for trial.

### c.    Representative Plaintiffs' Probability of Success and the Range of Possible Recovery Favors Approval

In analyzing the factors of probability of success on the merits and possible range of recovery, the court is guided by two principles: "'The Settlement terms should be compared with the likely rewards the class would have received following a successful trial' and 'the strength of the case for plaintiffs must be balanced against the amount offered in settlement.'" *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 433 (S.D. Tex. 1999). Because Title IX does not provide for recovery of compensatory damages, the relief at issue here is not monetary. Rather, the relief at issue is injunctive relief related to making improvements to Defendant's softball program. The settlement terms provide for substantial improvements, including:

- Oversight by an Equity Consultant, in lieu of oversight through a consent decree[1];

- Interim improvements to begin the Spring 2018 season in March, as opposed to waiting for resolution of trial in the Fall of 2018;

---

[1] The retention of the Equity Consultant has occurred. The Agreement and the consultant's resume, which establishes her qualifications to oversee the Settlement Agreement and ensure compliance with Title IX, are attached as Exhibit 5.

- Significant long-term improvements through the construction of a new complex that has many new and/or improved features and amenities, e.g. field lighting, a new locker room, new bullpens and pitching lane, new dugouts, and improved landscaping and parking arrangements.

*See* Exhibit 1.

Courts in these cases typically permit a phased-in approach to the improvements because of the significant financial burden it imposes. *See, e.g., Daniels v. Sch. Bd. of Brevard County, Fla.,* 985 F. Supp. 1458, 1463 (M.D. Fla. 1997)(citing *Cohen v. Brown University,* 101 F.3d 155, 185–88 (1st Cir.1996), *cert. denied*, 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997)).  In short, the settlement is squarely within the range that might be awarded following a trial.

### e.    The Complexity, Cost, and Probable Duration of the Proceedings Favors Approval

The current Scheduling Order [Doc. #13] has the case set for jury selection/trial on September 4, 2018. If the case were not settled, the Parties would have had significant discovery to engage in prior to the discovery deadline of April 9, 2018. Even if the case was tried timely, an appeal may ensue, and even if it does not, these cases can linger in the courts for years with post-judgment enforcement actions and requests for attorneys' fees. For example, see the excerpts from the docket sheet for the case of *Ollier et al v. Sweetwater Union High School District et al*, a case that was filed in April 2007 (Dkt #1), tried to the bench in October 2010 (Dkt #177), appealed to the Ninth Circuit (Dkt #205), subject to enforcement proceedings (Dkt #256), and still under court observation to this date (Dkt #336). (Exhibit 6). The specter of such lingering litigation certainly favors the approval of the Settlement Agreement.

### f.    The Opinions of the Proposed Class Representatives and Counsel Favors Approval

The Parties' counsel, after detailed mediation, determined that the settlement is fair, reasonable, and adequate.  Such agreement favors approval.  *See Reed*, 703 F.2d at 175 ("[T]he

value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where their bones are buried.")

The Settlement meets all the *Reed* factors.

### 2.      No Objections Have Been Filed.

After sending the approved class notice to the members of the preliminarily certified class, no objections were filed by the deadline of August 16, 2018. There were no class members opposing the settlement at the fairness hearing.

Because the parties have demonstrated that the Settlement Agreement is fair, adequate and reasonable and there is no opposition, this Court should grant final approval of the Settlement Agreement.

### B.      The Court Should Finally Approve Certification of the Settlement Class.

"[T]he 'settlement only' class has become a stock device," and "all Federal Circuits [have] recognize[d] [its] utility..." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) (internal citations omitted).  A class must satisfy the elements of Rule 23(a) and Rule(b)(3). *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471 (5th Cir. 1986).  The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *In re Heartland Payment Systems*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012).

Rule 23(a) allows certification of a class if:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

After satisfying Rule 23(a), Rule 23(b)(3) also requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The proposed "Settlement Class" includes (1) all current members of the Midland College Softball Team, (2) all future members of the Midland College softball team, and (3) former members of the Midland College softball team who would still be able to bring suit under the statute of limitations, i.e., those who played during the previous two years.[2]

### 1.    The Proposed Settlement Class Meets the Four Requirements of FRCP 23(a)

#### a.    The Settlement Class Is Sufficiently Numerous

The class meets the first standard of FRCP 23(a):  numerosity.  The class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy the numerosity requirement, a plaintiff does not need to show the exact number of class members at the time of certification, but must only show that it is difficult to join all members of the class. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038-39 (5th Cir. 1981). The Settlement Class consists of approximately 20 current players (freshman and sophomores), 20 former players who can bring suit, and an additional ten players each year in perpetuity.  Therefore, in only looking at the next five years, approximately 70 players will be included in the class.  In the next ten years, 120 players are included.  Thus, the Settlement Class satisfies the numerosity requirement.

#### b.    Questions of Law and Fact Are Common to the Class

The standard of commonality is also met.  Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  Commonality "is informed by the

---

[2] For Title IX claims, courts use the Texas personal injury statute of limitations of two years. *Gudgel v. Del Mar Coll.*, 2:16-CV-513, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018)(citing *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 761 (5th Cir. 2015)).

defendant's conduct as to all class members and any resulting injuries common to all class members." *Heartland*, 851 F. Supp. 2d at 1053 (internal citations omitted).

The suit regards the actions taken by the defendant that affect the team as a whole and each member individually almost exactly the same.  The question of which game day field, practice field, and locker room facility the team uses in comparison to the men's baseball team is the predominant fact issue relevant to each of the softball players.  The facts are accompanied by commonality in the members' questions of law:  whether Midland College violated Title IX. This class is the epitome of possessing predominant facts and a common question of law.

> **c.      The Claims of the Representative Plaintiffs are Typical of the Class**

Further, the Representative Plaintiffs' claims and defenses are typical of those of the Class. Fed. R. Civ. P. 23(a)(3). Typicality requires that "the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). (internal quotation marks omitted).  Here, the Representative Plaintiffs' claim is overwhelmingly similar to that of the Settlement Class; they claim that Midland College violated Title IX.  Thus, the typicality requirement is satisfied.

> **d.      Lead Plaintiffs and Counsel Are Adequate Representatives**

Next, the Representative Plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The class representatives and their counsel must not have impermissible conflicts of interest with the Settlement Class, and must vigorously prosecute the action for the Settlement Class. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

In this case, the Representative Plaintiffs have virtually indistinguishable interests from the other class members.  In particular, future class members will benefit for a full two years from the settlement, while current members will benefit only for the remainder of their Midland

College eligibility.  Plaintiffs' counsel is a long-time federal court practitioner with the requisite knowledge and skills to ably prosecute this matter. He has and will continue to represent his clients and the class with vigor, dedication, and proficiency.  Ergo, the adequacy requirement of Rule 23(a)(4) is satisfied.

### 2.     The Proposed Settlement Class Meets the Requirements of FRCP 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, the class must also satisfy the requirements of Rule 23(b)(3). *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010).  The Settlement Class meets the Rule 23(b)(3) standards.  There are two prongs to Rule 23(b)(3): The class proponent must establish that (1) "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [(2)] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### a.     Common Questions of Law and Fact Predominate the Class

The legal standard governing each of Plaintiffs' claims and the claims of the prospective class falls and would fall under Title IX.  The factual circumstances, as discussed above, affect the team as a whole and the individuals in an almost identical manner.  Not only do common legal standards and the facts predominate the class, they are essentially identical.  Therefore, the requirement of common questions of law and fact predominating is satisfied.

### b.     Class Action Is the Superior Method of Adjudication

The superiority prong of Rule 23(b)(3) is also satisfied.  A class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness. *See Amchem*, 521 U.S. at 615 (internal quotation marks omitted).  Due to the nature of junior colleges, a settlement class is highly efficient because a new set of players arrives each year.  Without a settlement class, a new Title IX suit regarding the playing, practice, and locker room facilities could be brought each and every year despite the college making

changes in conformity with past Title IX litigation and past player preferences.  The litigation would be costly in terms of time, effort and expense not only to the college, but would be costly to the students in terms of time and effort during their critical freshman and sophomore years of college.  In addition, if such repeat claims reached trial, it would be an inefficient use of judicial resources.

## V.    CONCLUSION

In summary, the Settlement Agreement is fair and adequately resolves this litigation. The proposed Settlement Class meets each of the Rule 23 requirements for certification.

## VI.    PRAYER

WHEREFORE, the Parties respectfully request that, following the fairness hearing, the Court grant final approval of the Settlement Agreement, finally certify the Settlement Class, and enter an order dismissing the Plaintiffs' lawsuit with prejudice.

Respectfully submitted,

By: _____
    Jennifer A. Powell
    Texas Bar No. 00783554
    Holly B. Wardell
    Texas Bar No. 00797627
    Marlene E. Wyatt
    Texas Bar No. 24102670
    Eichelbaum Wardell
    Hansen Powell & Mehl, P.C.
    4201 W. Parmer Lane, Suite A100
    Austin, Texas  78727
    512/476-9944
    512/472-2599 fax
    *Attorneys for Midland College*

By:   /s/John S. Klassen
     John S. Klassen
     Klassen Law Firm PLLC
     Texas Bar No. 11553500
     1407 W. Kansas Ave.
     Midland, Texas 79701
     (432) 684-1111
     john@klassenlawfirm.com
     *Attorney for Plaintiffs*

DATED:  September 4, 2018

EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| KIANI TELLES, | § | |
| ELIZABETH CHASTAIN, and | § | |
| CRYSTINE KISTNER, | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 7:17-CV-00083-RAJ |
| V. | § | |
| | § | |
| MIDLAND COLLEGE | § | |
| *Defendant.* | § | |

## SETTLEMENT AGREEMENT AND RELEASE

The Parties to the Settlement Agreement and Release ("Settlement Agreement") are the Plaintiffs and the Defendant in above-captioned civil lawsuit ("the Lawsuit").

The Plaintiffs are female students at Midland College. In their lawsuit, the Plaintiffs seek to enforce their rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.* The Defendant in this lawsuit is the Midland College, which will generally be referred to from here on as "the College."

On January 15, 2018, the Parties engaged in mediation which produced this Settlement Agreement. Debbie Osgood, Esq., served as mediator to facilitate the Parties' agreement to the Settlement Agreement. Ms. Osgood is a partner in the law firm of Hogan, Marren, Babbo & Rose, Ltd. She previously served for 25 years with the U.S. Department of Education, Office for Civil Rights, most recently as a National Enforcement Director.

Following a successful mediation, the Parties have agreed to settle the Plaintiffs' lawsuit under the terms described below. The Parties agree that entering into the Settlement Agreement, rather than engaging in contested litigation, is the best way to resolve the claims brought by the Plaintiffs in this matter.

1.  <u>Nonadmission</u>: Plaintiffs and the College, without admitting any of the allegations made by the other, have agreed to enter into this Settlement Agreement in good faith, solely to reduce further expenses, inconvenience, and distraction of litigation and in order to obtain the releases, covenants, and dismissal with prejudice contemplated by this Agreement and to put to rest with finality all disputes and controversies that exist between Plaintiffs and the College in the Lawsuit that have or may have arisen at any time in the past up to and including the final date of execution of this Settlement Agreement.

2.  <u>Board Approval</u>: The Parties agree and understand that the Settlement Agreement was subject to approval by the College's Board of Trustees. The College President's execution of the Settlement Agreement reflects that the Board has approved it.

3.  <u>Requests to the Court</u>: The Parties agree to:

   a.  Jointly file a motion for class certification for settlement purposes; and
   b.  Jointly file a motion to have the Court accept the Settlement Agreement and dismiss the case.

4.  <u>Monitor of Settlement Agreement</u>: The College agrees to retain an Equity Consultant to oversee and monitor the implementation of the Settlement Agreement. The College agrees that the Equity Consultant may obtain input from current members and coaches of the women's softball team. The Parties agree to work in good faith with one another and with the Equity Consultant to resolve any differences regarding the implementation of the Settlement Agreement. The Equity Consultant will serve until the end of the softball season in which the new softball facilities are completed, which is contemplated to be through the end of the spring 2020 season. The College will pay the Equity Consultant's cost.

5.  <u>Improvements to the Softball Program</u>: The College agrees to take the following steps to improve the facilities and benefits afforded to members of the College's women's softball team.

   a.  By March 1, 2018, the College agrees to take the following actions:

      i.   Provide a temporary, portable building for the women's softball team to use as a locker room; the building will be of suitable and adequate size for the softball team and will have sufficient space for the storage of the equipment and uniforms of individual players. This building will remain in place until the permanent locker room described in section 5(b) is completed.
      ii.  Make available a dedicated room in the College's Physical Education (PE) Building or Chaparral Center, with restroom access, for use by visiting women's softball teams.
      iii. Install new, fixed batting and helmet racks in the dugouts.
      iv.  Repurpose the existing women's softball locker room for use, until completion of the permanent locker room, to store team equipment and supplies.
      v.   Ensure that the maintenance of the women's softball field is comparable and adequate to that provided to the men's baseball team for its field.
      vi.  Remedy any outstanding issues relating to the drainage of the women's softball field.
      vii. Provide a dedicated room in the College's PE Building for umpires to use to change their clothing.
      viii. Provide comparable recruiting budgets to the women's softball team and to the men's baseball team.
      ix.  Ensure that the mode of travel provided to the women's softball team for away games is adequate, safe and comparable to that provided to the men's baseball team.

      x.    Make reasonable enhancements to the Wi-Fi capabilities at the women's softball field to enable live streaming of the softball games.

      xi.    Install an accessible ramp from the parking lot nearest to the women's' softball field to the sidewalk to the field.

      xii.    Install seats with backing in some portion of the spectator seating.

b.    By the start of the 2020 women's softball season, the College agrees to construct a new softball complex that will include the following new and/or improved features and amenities:

      i.    Field Lighting;

      ii.    A new locker room for the home team that includes the specifications in Attachment A (including two restrooms, two batting cages, and laundry facilities);

      iii.    Access to dedicated restroom facilities at the field for the visiting team;

      iv.    Larger cinderblock dugouts for the home and visiting teams;

      v.    Improved landscaping for the softball complex, including a new grass area next to the field to be used for warm-up by the players;

      vi.    New Bullpens, with a new pitching lane;

      vii.    Dedicated spaces for softball coaches, players and spectators in the parking lot adjacent to the softball field, with space reserved for the visiting team in the area closest to the field entrance, signage for the softball parking and police enforcement of the parking area designations.

c.    The respective deadlines set out in sections 5(a) and 5(b) are subject to the following:  The parties recognize that the College's obligation to accomplish the duties specified in this section 5 may be adversely affected by issues beyond the College's control, including construction difficulties, delays, and other issues. Accordingly, the parties agree that the deadlines set out in section 5(a) and 5(b) will be reasonably extended in the event of such issues.

d.    Except as explicitly stated in this Agreement, all aspects of the construction work contemplated herein, including, but not limited to, design, aesthetics, cost, etc. are solely within the College's discretion.

6.    <u>Release of Claims:</u> In exchange for the consideration set forth in this Agreement, Plaintiffs, their heirs, assigns, guardians, administrators, agents, attorneys, representatives, and all others in privity with her or who may claim under them by way of derivative claim, assignment or otherwise, agree to waive and release the College and its current and former trustees, administrators, employees, agents, servants, attorneys, representatives, insurers, and any and all other persons acting on behalf of the College, from any and all claims, demands, damages, costs, attorney's fees, losses, actions or causes of action, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of or may in any way grow out of, and which are the subject of the Lawsuit that Plaintiffs have, might have or ever had, known or unknown, on the basis of conduct or omissions occurring prior to the date of execution of this Settlement Agreement.

7. <u>Fees and Costs</u>: The College shall pay any and all costs for the Mediator for conducting and finalizing the mediation. Otherwise, the Parties agree they are each responsible for their own attorney's fees, expenses, and costs.

8. <u>Negotiation and Drafting</u>: For the purposes of resolving any ambiguities that may later arise in interpreting this Settlement Agreement, neither party will be deemed to have drafted this Settlement Agreement so that neither party will be entitled to have any terms of this Settlement Agreement construed in its favor by default. Likewise, the Parties aver that they were all represented by competent attorneys throughout the mediation process and the negotiation of this Settlement Agreement.

9. <u>Entire Agreement</u>. This Settlement Agreement contains the entire agreement between the parties and fully supersedes any and all prior agreements or understandings, oral or written, between them pertaining to the subject matter hereof. This Settlement Agreement may not be altered, amended, or modified in any respect, except by written instrument signed by all parties to this Settlement Agreement.

10. <u>Choice of Law and Venue</u>: This Agreement shall in all respects be interpreted, enforced and governed under the laws of the State of Texas. This Agreement is made and performable in Midland County, Texas, and shall be construed and enforced in accordance with, and shall be governed by the laws of the State of Texas.

11. <u>Severability</u>: Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

12. <u>Counterparts</u>: This Settlement Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together and shall constitute one and the same instrument.

I have read this document and I voluntarily agree to this Settlement Agreement.

*For the Plaintiffs:*

_Kimi tue_    1·25·18

**Kiani Telles**     Date
*Plaintiff*

_Elizabeth Chastain_  1/25/18

**Elizabeth Chastain**   Date
*Plaintiff*

Settlement Agreement and Release          Page 4

_Crystine Kistner_
*Plaintiff*

Date 1/25/18

_John S. Klassen_
Klassen Law Firm PLLC
*Attorney for Plaintiffs*

Date 1/25/18

*For the College:*

_Dr. Stephen Thomas_
President of Midland College

Date 1/30/18

_Jennifer A. Powell_
Eichelbaum Wardell
   Hansen Powell & Mehl, P.C.
*Attorney for the Defendant*

Date 1/30/18

# ATTACHMENT A



EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| KIANI TELLES, ELIZABETH CHASTAIN, | § | |
| and CRYSTINE KISTNER, | § | |
|       *Plaintiffs*, | § | |
| | § | |
| v. | § | No. MO:17-CV-00083-DC |
| | § | |
| MIDLAND COLLEGE, | § | |
|       *Defendant*. | § | |

## ORDER GRANTING IN PART JOINT MOTION TO PRELIMINARILY APPROVE SETTLEMENT, PRELIMINARILY CERTIFY SETTLEMENT CLASS, AND APPROVE FORM AND MANNER OF NOTICE

BEFORE THE COURT is Plaintiffs Kiani Telles, Elizabeth Chastain, and Crystine Kistner and Defendant Midland College's (Parties) Joint Motion to Preliminarily Approve Settlement, Preliminarily Certify Settlement Class, and Approve Form and Manner of Notice. (Doc. 22). After due consideration, the Parties' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

On April 26, 2017, Coach Tony Ramos, the women's softball coach for Midland College, filed his Original Complaint, thereby initiating this action.[1] (Doc. 1). On June 1, 2017, Coach Ramos filed an Amended Complaint adding several members of Midland College's softball team, Kiani Telles, Elizabeth Chastain, and Crystine Kistner (Plaintiffs), as named plaintiffs. (Doc. 6). Plaintiffs seek injunctive relief and compensatory damages for Midland College's alleged discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. (Doc. 1). Specifically, Plaintiffs allege Defendant discriminated between the softball and baseball teams on the basis of sex and point to a number of disparities between the two teams in regard to game day

---

[1] Ultimately, the Court granted Defendant's Partial Motion to Dismiss—finding Coach Ramos did not have standing to bring the Title IX claims—and dismissed Coach Ramos' claims from the case. (Doc. 12).

facilities, practice facilities, locker rooms, travel amenities, budgeting, and support staff. (Doc. 22 at 2).

On January 15, 2018, the Parties engaged in mediation and, on January 30, 2018, executed a final agreement (Settlement Agreement). *Id*. In the Settlement Agreement, the Parties reached settlement terms and agreed to seek certification of a settlement class. *Id*. The proposed settlement class includes: (1) all current members of the Midland College softball team; (2) all future members of the Midland College softball team; and (3) former members of the Midland College softball team who would still be able to bring suit under the statute of limitations, i.e., those who played during the previous two years (Settlement Class). *Id*. at 8. Accordingly, the Parties filed the instant Motion asking the Court to preliminarily approve the terms of the Settlement Agreement and certify the Settlement Class. *Id*. at 2–3. Finally, the Parties request the Court approve the proposed form and manner of notice to the settlement class and set a final approval hearing for the settlement. *Id*. at 3.

## II.    DISCUSSION

The claims, issues, or defenses of a certified class may be settled only with the court's approval. Fed. R. Civ. P. 23. Approval of a settlement in a class action necessarily requires the Court to determine if the proposed class is a proper class for settlement purposes. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426–27 (E.D. Tex. 2002). Next, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. *Id*. Finally, if the Court determines the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *Id*.

### A. **Preliminary Certification of Settlement Class**

For purposes of settlement, Plaintiffs propose a Settlement Class consisting of: (1) all current members of the Midland College softball team; (2) all future members of the Midland College softball team; and (3) former members of the Midland College softball team who would be able to

2

bring suit under the statute of limitations, i.e., those who played during the previous two years. (Doc. 22 at 8). Federal Circuits recognize the utility of Federal Rule of Civil Procedure 23(b)(3) settlement classes and, among current applications of Rule 23(b)(3), the "settlement only" class has become a stock device. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 618 (1997). A district court may certify a class only if the proposed class meets the four prerequisites of Rule 23(a) and one of three additional requirements in Rule 23(b). *See* Fed. R. Civ. P. 23; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999). The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *In re Heartland Payment Systems*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012).

### 1. Rule 23(a) Factors

"Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prod., Inc.*, 521 U.S. at 613.

With regard to the numerosity requirement, the Parties estimate that the Settlement Class encompasses 20 former players, 20 current players, and an additional ten players each subsequent year in perpetuity. (Doc. 22 at 8). The Court finds that a joinder of all former, current, and future Midland College softball team members is impracticable and the numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1).

The Parties next assert the proposed class is "the epitome of possessing predominant facts and a common question of law." (Doc. 22 at 9). The Court agrees. Each member of the proposed class alleges a common contention of Defendant's misconduct—disparate treatment of the softball team on the basis of sex in violation of Title IX—and common injuries, such as worse facilities and less support, that the team as a whole suffered as a result. *See In re Heartland Payment Sys., Inc.*

*Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1053 (S.D. Tex. 2012). Thus, there are questions of law or fact common to the Parties' proposed class. Fed. R. Civ. P. 23(a)(2).

The Court also finds the representative Plaintiffs, as members of the Midland College softball team, assert a Title IX claim that is typical of, if not identical to, the proposed class composed of former, current, and future members of the team. *See* Fed. R. Civ. P. 23(a)(3). Further, the Court agrees that the representative Plaintiffs and their counsel will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Plaintiffs possess the same interest and allege the same injury as the class members they seek to represent. *Amchem*, 521 U.S. at 625–26. Plaintiffs' counsel satisfies the dual requirements of competence and zeal as "a long-time federal practitioner" that "has and will continue to represent his clients and the class with vigor, dedication, and proficiency." (Doc. 22 at 10); *See In re Heartland,* 851 F. Supp. 2d at 1055.

### 2. Rule 23(b) Factors

In addition to satisfying the Rule 23(a) requirements, "[t]he proposed class must also satisfy the requirements of Rule 23(b)(1), (2), or (3)." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010). Here, the Parties assert the proposed Settlement Class satisfies the two prongs of Rule 23(b)(3): (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. (Doc. 22 at 10.)

As asserted, the Title IX claims brought against Defendant arise from the allegedly disparate treatment of the Midland College Softball team as a whole, which in turn affects the individual players composing the Settlement Class. The relevant inquiry as to these claims compares Defendant's treatment of the softball team at large to the baseball team, particularly in regard to the teams' respective facilities, budget, and support. Thus, common questions of law and fact predominate over questions affecting only individual members of the Settlement Class, if any. Fed. R. Civ. P. 23(b)(3).

4

To determine whether a class action is the superior method of adjudication, the Court considers: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. Rule 23(b). However, in the context of a settlement-only class, the fourth factor may be disregarded. *See Amchem*, 521 U.S. at 620.

At this preliminary settlement stage, there is no indication that the proposed Settlement Class' members have any interest in controlling the action or have begun other litigation concerning the instant controversy. Fed. R. Civ. P. 23(b)(3)(A) and (B). The Court also agrees with the Parties that concentrating the settlement of the claims "serves the primary goals of Rule 23, namely 'economies of time, effort, and expense' without sacrificing fairness" to the Settlement Class' members. (Doc. 22 at 10) (citing *Amchem*, 521 U.S. at 615). The alleged problem and proposed solution both center on Defendant's treatment of the softball program, which features a roster that changes each season with additional teammates—and Settlement Class members—joining each year. It is in the interest of the Court, the Settlement Class, and the Defendant to resolve these issues in one fell swoop.

Accordingly, the Court finds the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) sufficiently satisfied to warrant a preliminary certification of the proposed Settlement Class.

**B.  Preliminary Approval of Settlement Agreement**

Although a more rigorous examination of the Settlement Agreement is required following a formal fairness hearing, the Court need only conduct a preliminary fairness evaluation at this stage of the proceedings. *See McNamara*, 214 F.R.D. at 426. "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive

compensation for attorneys, and appears to fall within the ra[n]ge of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.* at 430 (quoting *Manual for Complex Litigation*, Third, at 237).

Guided by the factors enumerated in *Reed v. General Motors Corporation*, the Parties illustrate the lack of obvious deficiencies in the Settlement Agreement.[2] (Doc. 22 at 3) (quoting 703 F.2d 170 (5th Cir. 1983)). The Parties assert they have engaged in informal discovery for months, giving each side a sufficient understanding of the facts and relative strength of the legal claims. (Doc. 22 at 5). Settlement negotiations were conducted at arm's length with the guidance of a mediator specializing in Title IX claims. *Id.* Ultimately, the Parties' counsel reached a settlement they believe to be fair, reasonable, and adequate. *Id.* at 7.

The Settlement Agreement provides for injunctive, rather than compensatory relief, requiring "phased-in" improvements to the Midland College softball program. *Id.* at 6. Although only the future members of the Midland College softball team will be able to reap the benefits of interim improvements, it is not to an undue degree that would render the Settlement Agreement unfair. Further, while Defendant is required to pay any and all costs for the mediator, the Parties agree to be responsible for their own attorney fees, expenses, and costs. *Id.* at 17. The relief requested appears to fall within the range of possible approval.

The Court finds the Settlement Agreement lacks any obvious deficiencies and does not disclose grounds to doubt its fairness. *McNamara*, 214 F.R.D. at 430. Accordingly, the Settlement

---

[2] A district court must consider the "*Reed* Factors" in determining the fairness, reasonableness, and adequacy of a proposed settlement. *All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011). The six factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983). The Court will apply and analyze these factors with greater scrutiny following a formal fairness hearing and prior to final approval of the settlement.

Agreement meets the requirements for preliminary approval and therefore notice should be issued to potential class members. *Id.* at 431.

### C. Form and Manner of Notice

"If the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which argument and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. Federal Rule of Civil Procedure 23(e) requires the Court to direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. As the Court has only just preliminarily certified the Settlement Class pursuant to Rule 23(b)(3), the requisite "reasonable manner" of notice is that proscribed by Rule 23(c)(2)(B) which calls for "the best notice that is practicable under the circumstances." Accordingly, the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). These form requirements are in addition to, and not in lieu of, notice of a formal fairness hearing.

The Court finds the Parties' proposed manner of notice to be the best notice that is practicable under the circumstances:

> Within thirty (30) calendar days of the Effective Date of the Court's granting of the Motion, Defendant shall distribute the attached notice to the Class. The notice distribution process will include direct mailings to the current softball players' physical addresses and official Midland College email addresses. Defendant shall send the notice to both the physical addresses and primary email addresses of players formally committed to playing on the Midland College softball team in 2018-2019. Notices will be sent to the last known physical addresses and email addresses on file of former players whose potential claims fall within the statute of limitations (two years). Further, Defendant will mail the notice to both the physical

and email addresses of players being actively recruited to join the
Midland College softball team in 2018-2019. Defendant shall bear all
the costs of notice to the class.

(Doc. 22-1 at 1). Although the Court finds the Parties' proposed manner of notice satisfactory, the

form of notice is deficient in that it does not inform potential class members of the formal fairness

hearing.

Guided by *McNamara v. Bre-X Minerals Ltd.*, a case cited by the Parties in their Joint

Motion, the Court finds notice of the upcoming formal fairness hearing should be provided to

potential class members upon the Court's preliminary certification of a settlement-only class and

approval of the settlement terms. *See* 214 F.R.D. at 426. In *McNamara*, the United States District

Court for the Eastern District of Texas, Texarkana Division, approved the Parties' proposed notice

which—in addition to information regarding the litigation, settlement terms, and class member

rights—included two sections notifying potential class members of a settlement fairness hearing.

(*McNamara*, 5:97-CV-159, Doc. 674 at 74). The first, a section entitled "Notice of Settlement

Fairness Hearing" provides:

> 19. NOTICE IS HEREBY GIVEN, pursuant to Rule 23 of the Federal
> Rules of civil Procedure and an Order of the United States District
> Court for the Eastern District of Texas, Texarkana Division (the
> "Court") dated _____, 2001, that a hearing will be held before the
> Honorable David J. Folsom in the U.S. Courthouse, 500 State Line
> Avenue, 3rd Floor, Texarkana, Texas, at __:__ _.m., on _____, 2001
> (the "Settlement Fairness Hearing") to determine whether a proposed
> settlement (the "Settlement") of the Action with respect to defendant
> Bresea only, as set forth in the Settlement Agreement, is fair,
> reasonable and adequate for the settlement of the U.S. Class' claims
> against Bresea, and to consider the application of Co-Lead Counsel
> for an award of costs and expenses.

> 20. The Court, by Order for Notice and Hearing in Connection with
> Settlement with Bresea Resources Ltd., dated _____, 2001, has
> certified a Plaintiff Class (the "U.S. Class") consisting of: [class
> description omitted].

*Id*. at 84–85. The second section regarding the settlement fairness hearing explains:

56. At the Settlement Fairness Hearing, the Court will determine whether to finally approve the Settlement Agreement and dismiss the Action as against Bresea and with prejudice. The Settlement Fairness hearing, which is scheduled to commence on _____, 2001 may be adjourned from time to time by the Court without further written notice to the U.S. Class. If the Settlement is approved, the Court will also consider the application of Co-Lead Counsel for an award of past and future costs and expenses.

57. At the Settlement Fairness Hearing, any U.S. Class Member who has not properly submitted a Request for Exclusion from the U.S. Class may appear in person or by counsel and be heard to the extent allowed by the Court in opposition to the fairness, reasonableness and adequacy of the Settlement, or the application for an award of past and future costs and expenses, provided, however, that in no event shall any person be heard in opposition to the Settlement, or Co-Lead Counsel's application for reimbursement of past and future costs and expenses, and in no event shall any paper or brief submitted by any such person be accepted or considerd by the Court, unless, on or before _____, 2001, such person (a) files with the Clerk of the Court, United States Courthouse, 500 State Line Avenue, 3rd Floor, Texarkana, Texas 75501 notice of such person's intention to appear, showing proof of such person's membership in the U.S. Class, and providing a statement that indicates the basis for such opposition, along with any documentation in support of such objection, and (b) simultaneously serves copies of such notice, proof, statement and documentation, together with copies of any other papers or briefs such person files with the Court, in person or by mail upon either of Plaintiffs' Co-Lead Counsel: [attorneys' names omitted] and upon Counsel for Bresea: [attorney's name omitted].

*Id.* at 99–100. The Court finds the addition of comparable information to the Parties' proposed form of notice is necessary to satisfy the requirements of Federal Rule of Civil Procedure 23(c) and (e).

## III.    CONCLUSION

Based on the foregoing discussion, the Parties' Joint Motion to Preliminarily Approve Settlement, Preliminarily Certify Settlement Class, and Approve Form and Manner of Notice is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 22).

Accordingly, the Court **PRELIMINARILY CERTIFIES** the Parties' proposed Settlement Class and **PRELIMINARILY APPROVES** the Parties' proposed Settlement Agreement.

Further, the Court **APPROVES** the Parties' proposed manner of notice in regard to distribution of Class Notice to the Settlement Class.

The Court, however, **REJECTS** the Parties' proposed form of Class Notice. The Court **ORDERS** the Parties to add information regarding a Preliminary Fairness Hearing to their proposed Class Notice and move for Court approval of such Amended Class Notice.

Upon approval of the Parties' Amended Class Notice, the Court will issue a schedule regarding settlement notice and a fairness hearing by separate order.

It is so **ORDERED.**

**SIGNED this 30th day of April, 2018.**

_____
**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **KIANI TELLES, ELIZABETH CHASTAIN,** | § | |
| **and CRYSTINE KISTNER,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **No. MO:17-CV-00083-DC** |
| | § | |
| **MIDLAND COLLEGE,** | § | |
| *Defendant.* | § | |

### ORDER APPROVING NOTICE AND SETTING FAIRNESS HEARING

BEFORE THE COURT is Plaintiffs Kiani Telles, Elizabeth Chastain, and Crystine Kistner and Defendant Midland College's Amended Proposed Class Notice. (Doc. 24). In its previous Order, the Court preliminarily certified the proposed Settlement Class and approved the proposed Settlement Agreement. (Doc. 23). However, while the Court found the manner of the parties' Class Notice to be satisfactory, the Court found the form of such notice—which made no mention of the requisite Preliminary Fairness Hearing—deficient.[1] *Id.* The Court ordered the parties to amend the proposed Class Notice to include the pertinent information relating to the Preliminary Fairness Hearing. *Id.* After reviewing the parties' Amended Proposed Class Notice, the Court finds it complies with the Court's Order and constitutes the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Court **APPROVES** the parties' Amended Proposed Class Notice. (Doc. 24). Having previously determined the proposed Settlement Agreement to be fair, the Court **DIRECTS** the parties to provide the approved Notice to the members of the preliminarily Certified Settlement Class in the approved manner—via the proposed Class members' physical and email addresses. *See McNamara*, 214 F.R.D. at 426-27.

---

[1] "If the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which argument and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

Further, the Court **ORDERS** the parties to distribute the Proposed Amended Class Notice to the Settlement Class within **THIRTY (30) DAYS** of the entry of this Order.

The Court sets the Preliminary Fairness Hearing for **FRIDAY, AUGUST 31, 2018, at 3:00 p.m.,** in the U.S. Courthouse for the Western District of Texas, Midland/Odessa Division, located at 200 East Wall Street, Midland, Texas 79701.

It is so **ORDERED.**

**SIGNED this 29th day of June, 2018.**

**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| KIANI TELLES, | § | |
| ELIZABETH CHASTAIN, and | § | |
| CRYSTINE KISTNER, | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 7:17-CV-00083-RAJ |
| V. | **§** | |
| | § | |
| MIDLAND COLLEGE | § | |
| *Defendant.* | § | |

### AFFIDAVIT OF JULIA VICKERY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF MIDLAND | § |

Before me, the undersigned notary, on this day, personally appeared Julia Vickery, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

1.    "My name is Julia Vickery. I am 18 years of age or older and of sound mind, and I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    "I am the Vice President of Student Services of Midland College.

3.    "On July 18, 2018, a copy of the Notice (Attachment 1) was emailed to thirty class members. (Attachment 2)

4.    "On July 19, 2018, a copy of the Notice was sent by first class mail via the United States Postal Service to the same class members.

5.    "One email was returned as "undeliverable" (Attachment 3), and none of the Notices were returned by mail."

Further, Affiant sayeth naught.

Julia Vickery

SWORN to and SUBSCRIBED before me by Julia Vickery on the August 24, 2018.

Notary Public in and for the
State of Texas

**FEMALE SOFTBALL STUDENTS AT MIDLAND COLLEGE:**
**THIS NOTICE AFFECTS YOUR RIGHTS – PLEASE READ IT CAREFULLY**

Traducción en español: Si usted desea que este aviso sea traducido en español, por favor póngase en contacto con abogados de los Demandantes al 415-864-8848. [If you wish to have this notice translated into Spanish, please contact Plaintiffs' attorneys at (432) 638-7332.]

A Title IX class action lawsuit on behalf of **Midland College female softball students who have participated in Midland College softball within the last two years, are already-recruited to participate in Midland College softball, or are currently participating in Midland College softball** was filed in federal court against Midland College alleging sex discrimination in softball athletics. The lawsuit, *Telles v. Midland College*, No. 17-CV-83-DC, sought injunctive and declaratory relief. **On April 30, 2018, the Court preliminarily approved a Settlement Agreement between the parties and certified the plaintiffs as a class.**

I.     **Notice of Settlement Fairness Hearing**: Notice is hereby given, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Texas Midland-Odessa Division (the "Court") dated June 29, 2018, that a hearing will be held before the Honorable David Counts in the U.S. Courthouse, 200 East Wall, Midland, Texas 79701, at 3:00 p.m. on August 30, 2018 (the "Settlement Fairness Hearing") to determine whether a proposed settlement (the "Settlement") of the Action with respect to the Midland College, as set forth in the Settlement Agreement, is fair, reasonable and adequate for the settlement of the Class' claims against Midland College.

The Court, by Order Granting In Part Joint Motion to Preliminarily Approve Settlement, Preliminarily Certify Settlement Class, and Approve Form and Manner of Notice, dated April 30, 2018, has preliminarily approved the Parties' Settlement Agreement and preliminarily approved the Parties' proposed Settlement Class (the "Class") consisting of: (1) all current members of the Midland College Softball Team, (2) all future members of the Midland College softball team, and (3) former members of the Midland College softball team who would still be able to bring suit under the statute of limitations, i.e., those who played during the previous two years.

At the Settlement Fairness Hearing, the Court will determine whether to finally approve the Settlement Agreement and dismiss the Action as against Midland College and with prejudice. The Settlement Fairness Hearing, which is scheduled to commence on August 30, 2018, may be adjourned from time to time by the Court without further written notice to the Class.

At the Settlement Fairness Hearing, any Class member who has not properly submitted a Request for Exclusion from the Class referenced below may appear in person or by counsel and be heard to the extent allowed by the Court in opposition to the fairness, reasonableness and adequacy of the Settlement, provided, however, that in no event shall any person be heard in opposition to the Settlement, and in no event shall any paper or brief submitted by any such person be accepted or considered by the Court, unless, on or

<span style="color:maroon">**AFFIDAVIT ATTACHMENT 1**</span>

before August 16, 2018, such person (a) files with the Clerk of the Court, United States Courthouse, 200 East Wall, Room 222, Midland, Texas 79701 notice of such person's intention to appear, showing proof of such person's membership in the Class, and providing a statement that indicates the basis for such opposition, along with any documentation in support of such objection, and (b) simultaneously serves copies of such notice, proof, statement and documentation, together with copies of any other papers or briefs such person files with the Court, in person or by mail upon Class Counsel:

John S. Klassen
Klassen Law Firm PLLP
1407 W. Kansas Ave.
Midland, Texas 79701
(432) 638-7332
*Attorney for Plaintiffs/Class Counsel,*

and upon Counsel for Midland College:

Jennifer A. Powell
Eichelbaum Wardell
Hansen Powell & Mehl, P.C.
4201 W. Parmer Lane, Suite A100
Austin, Texas 78727
512/476-9944
512/472-2599 fax
*Attorney for Midland College.*

II.     **Settlement Agreement**:  Without admitting any of the allegations made in the lawsuit, Midland College (the "College") has agreed to enter into a Settlement Agreement with the plaintiffs as described below.

On April 30, 2018, the Court preliminarily approved the Settlement Agreement to provide specific benefits to female softball student Plaintiffs. The complete Settlement Agreement can be found at the following website: www.midland.edu. An Equity Consultant will monitor Defendant College's compliance with this Agreement.  The Equity Consultant will serve until the end of the softball season in which the new softball facilities are completed, which is contemplated to be through the end of the spring 2020 season.

III.    **Release of Claims**: In exchange for the consideration set forth in the Settlement Agreement, Plaintiffs, their heirs, assigns, guardians, administrators, agents, attorneys, representatives, and all others in privity with her or who may claim under them by way of derivative claim, assignment or otherwise, agree to waive and release the College and its current and former trustees, administrators, employees, agents, servants, attorneys, representatives, insurers, and any and all other persons acting on behalf of the College, from any and all claims, demands, damages, costs, attorney's fees, losses, actions or causes of action, which the Plaintiffs now have, or which may hereafter accrue or

otherwise be acquired, on account of or may in any way grow out of, and which are the subject of the Lawsuit that Plaintiffs have, might have or ever had, known or unknown, on the basis of conduct or omissions occurring prior to the date of execution of this Settlement Agreement.

IV.     **Exclusion and Appearance**: If you seek to be excluded from the Class, contact Class Counsel at the information above by August 16, 2018. You may also enter an appearance through an attorney if you so desire. Please contact Class Counsel or have your attorney contact Class Counsel if you seek to make an appearance.

## SUMMARY OF RELIEF

**Improvements to the Softball Program**: The College agrees to take the following steps to improve the facilities and benefits afforded to members of the College's women's softball team.

a.      By March 1, 2018, the College agrees to take the following actions:

i.      **Portable Building Locker Rooms:** Provide a temporary, portable building for the women's softball team to use as a locker room; the building will be of suitable and adequate size for the softball team and will have sufficient space for the storage of the equipment and uniforms of individual players. This building will remain in place until the permanent locker room described in section 5(b) is completed.

ii.     **Visiting Team Restrooms:** Make available a dedicated room in the College's Physical Education (PE) Building or Chaparral Center, with restroom access, for use by visiting women's softball teams.

iii.    **Batting and Helmet Racks:** Install new, fixed batting and helmet racks in the dugouts.

iv.     **Temporary Locker Room:** Repurpose the existing women's softball locker room for use, until completion of the permanent locker room, to store team equipment and supplies.

v.      **Field Maintenance:** Ensure that the maintenance of the women's softball field is comparable and adequate to that provided to the men's baseball team for its field.

vi.     **Field Drainage:** Remedy any outstanding issues relating to the drainage of the women's softball field.

vii.    **Umpire Changing Room:** Provide a dedicated room in the College's PE Building for umpires to use to change their clothing.

viii. **Recruiting Budget:** Provide comparable recruiting budgets to the women's softball team and to the men's baseball team.

ix. **Travel Methods:** Ensure that the mode of travel provided to the women's softball team for away games is adequate, safe and comparable to that provided to the men's baseball team.

x. **WIFI Availability:** Make reasonable enhancements to the Wi-Fi capabilities at the women's softball field to enable live streaming of the softball games.

xi. **Parking Accessibility:** Install an accessible ramp from the parking lot nearest to the women's softball field to the sidewalk to the field.

xii. **Spectator Seating:** Install seats with backing in some portion of the spectator seating.

b. By the start of the 2020 women's softball season, the College agrees to construct a new softball complex that will include the following new and/or improved features and amenities:

i. Field Lighting;

ii. A new locker room for the home team that includes the specifications in Attachment A (including two restrooms, two batting cages, and laundry facilities);

iii. Access to dedicated restroom facilities at the field for the visiting team;

iv. Larger cinderblock dugouts for the home and visiting teams;

v. Improved landscaping for the softball complex, including a new grass area next to the field to be used for warm-up by the players;

vi. New Bullpens, with a new pitching lane;

vii. Dedicated spaces for softball coaches, players and spectators in the parking lot adjacent to the softball field, with space reserved for the visiting team in the area closest to the field entrance, signage for the softball parking and police enforcement of the parking area designations.

## Julia Vickery

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | 'crystalsoliz2018@yahoo.com'; 'kianabrodersonjones@gmail.com'; 'melinamartinez323@gmail.com'; 'syvette15@gmail.com'; 'kameronmartinez0@gmail.com'; 'panuco1580@gmail.com'; 'abbi29sanchez@gmail.com'; 'klmaddox@tlu.edu'; 'bermudezlyana1@gmail.com'; 'bermudezlilyan23@gmail.com'; 'anna.sherburne@sbcglobal.net'; 'juliettekathryn@gmail.com'; 'kylajones8suddenpactblake@gmail.com'; 'hrhoward@mail.csuchico.edu'; 'domingueze887@gmail.com'; 'renae_gamboa@yahoo.com'; 'zaithasuarez14@gmail.com'; 'natalie_gonzalez78@yahoo.com'; 'briannadom11@gmail.com'; 'aryellaguiar7@yahoo.com'; 'deandraallen369@yahoo.com'; 'rociomar09@outlook.com'; 'brandihaller2@outlook.com'; 'hannahice02@gmail.com'; 'taterbug1228@gmail.com'; 'haleighleusch00@gmail.com'; 'reganhubbard23@yahoo.com'; 'hernandez.alexah9@icloud.com'; 'yvo1422@gmail.com'; 'mackenziehoots2017@gmail.com' |
| **Sent:** | Wednesday, July 18, 2018 3:23 PM |
| **Subject:** | Relayed: Midland College Softball Settlement Notice - Please Read |

## Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:

'crystalsoliz2018@yahoo.com' (crystalsoliz2018@yahoo.com)

'kianabrodersonjones@gmail.com' (kianabrodersonjones@gmail.com)

'melinamartinez323@gmail.com' (melinamartinez323@gmail.com)

'syvette15@gmail.com' (syvette15@gmail.com)

'kameronmartinez0@gmail.com' (kameronmartinez0@gmail.com)

'panuco1580@gmail.com' (panuco1580@gmail.com)

'abbi29sanchez@gmail.com' (abbi29sanchez@gmail.com)

'klmaddox@tlu.edu' (klmaddox@tlu.edu)

'bermudezlyana1@gmail.com' (bermudezlyana1@gmail.com)

'bermudezlilyan23@gmail.com' (bermudezlilyan23@gmail.com)

'anna.sherburne@sbcglobal.net' (anna.sherburne@sbcglobal.net)

'juliettekathryn@gmail.com' (juliettekathryn@gmail.com)

'kylajones8suddenpactblake@gmail.com' (kylajones8suddenpactblake@gmail.com)

'hrhoward@mail.csuchico.edu' (hrhoward@mail.csuchico.edu)

'domingueze887@gmail.com' (domingueze887@gmail.com)

AFFIDAVIT ATTACHMENT 2

**From:** Mail Delivery Subsystem [mailto:mailer-daemon@googlemail.com]
**Sent:** Wednesday, July 18, 2018 3:23 PM
**To:** Julia Vickery
**Subject:** Undeliverable: Midland College Softball Settlement Notice - Please Read

## Delivery has failed to these recipients or groups:

kylajones8suddenpactblake@gmail.com
A problem occurred while delivering this message to this email address. Try sending this message again. If the problem continues, please contact your helpdesk.

**Diagnostic information for administrators:**

Generating server: googlemail.com

kylajones8suddenpactblake@gmail.com
Remote Server returned '< #5.0.0 smtp: The email account that you tried to reach does not exist. Please try double-checking the recipient's email address for typos or unnecessary spaces. Learn more at https://support.google.com/mail/?p=NoSuchUser b9-v6sor1621801iob.268 - gsmtp>'

Original message headers:

```
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
        d=midland-edu.20150623.gappssmtp.com; s=20150623;
        h=from:to:subject:thread-topic:thread-index
         :disposition-notification-to:return-receipt-to:date:message-id
         :accept-language:content-language:mime-version;
        bh=8NV1VP+GaRvVWZ1D036v+h0RpE1eG9fTtvhsWKvj1tA=;
        b=GN6MS0B17o1ZY7+W0K0d4NB6KYZY5nB/fZEFHws71XxIA2XA0+jMhZyj/rWwVro+Qs
         dQ05+dByef/aKYvHW7L790j7iieEb542kLIf6ocFXhWnvMt//F1iWEmEJu/T5HEomaVQ
         QIpVXbd2REO3BvDX+3c1guD+G95brHBn/DJWQTDay0X6/cXc/m6RfeZM5uZK6/c+qzJE
         fL+xL/berMzB4JuES1H14GyLhxkjcOUb0ok08Fv0ptfgBnhZ0YJminwIqE+nWGT5Iihw
```

AFFIDAVIT ATTACHMENT 3

```
                qC0OfHgWBJy9mmP+10+FB7S7SxnH3asJjJKr6tWf/ljNK+XUoZW9NrGxHB5S8yuPaRtx
                t64A==
X-Google-DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
        d=1e100.net; s=20161025;
        h=x-gm-message-state:from:to:subject:thread-topic:thread-index
         :disposition-notification-to:return-receipt-to:date:message-id
         :accept-language:content-language:mime-version;
        bh=8NV1VP+GaRvVWZlD036v+h0RpE1eG9fTtvhsWKvjltA=;
        b=DRGhTHolT0ukysNo7hV3fvH6qdhNeynm9Fu9GDN2N3N0MqDfyZf3Lw7E1jhf698nR9
         OLaEPP4B4VybW/rfU1DFrT4sN+6xonOMVuPJTEGM8XSs/GzgpqzZxb67iaZIM8NF0TtK
         A8O/mq4KHi7Mkl34IaiD4WvproLHHslA72MSQDkRaHPujUHdQR7fos63genGm4PAbEno
         WOlGpcGcNsvswmduTrHofb/BI7kuXiaGWpDYqgd2+AUxOYJy5IS1CQH4OdjtQ6EB/LD5
         tgRK2sFMQQ7h+syFwsQJeEnPz0OUAvh+34rkHfrZ3dtN/Q4yThlq+owvaf9ApcJNJhcr
         8HNw==
X-Gm-Message-State: AOUpUlHWjAMaRm+O2c+gzQ3lUwg1dWqUTojdkbjrIyHp/K4/j3cPeHt3
        23aVnY42g/TAiHDlCHTnylFVYsUPADrtzuh64ONbBvf8NGfMbw==
X-Google-Smtp-Source:
AA+uWPz2Je3CE1vkXt1cP+zunTA9hDtM2HeyE/OEutsL293Bvn9oZKqOoVOYripscFsH4ruhDiCJhVCbId7u
X-Received: by 2002:a6b:dc0e:: with SMTP id s14-v6mr5900156ioc.226.1531945409471;
        Wed, 18 Jul 2018 13:23:29 -0700 (PDT)
Return-Path: <jvickery@midland.edu>
Received: from outlook.midland.edu (outlook.midland.edu. [69.84.160.50])
        by smtp-relay.gmail.com with ESMTP id 22-
v6sm990295iti.11.2018.07.18.13.23.28;
        Wed, 18 Jul 2018 13:23:29 -0700 (PDT)
X-Relaying-Domain: midland.edu
Received: from EXCH03.internal.midland.edu (192.168.10.62) by
 EXCH02.internal.midland.edu (192.168.10.61) with Microsoft SMTP Server (TLS)
 id 15.0.995.29; Wed, 18 Jul 2018 15:23:27 -0500
Received: from EXCH03.internal.midland.edu ([::1]) by
 EXCH03.internal.midland.edu ([fe80::6d23:23f8:aaee:3497%14]) with mapi id
 15.00.0995.028; Wed, 18 Jul 2018 15:23:27 -0500
From: Julia Vickery <jvickery@midland.edu>
To: Julia Vickery <jvickery@midland.edu>
Subject: Midland College Softball Settlement Notice - Please Read
Thread-Topic: Midland College Softball Settlement Notice - Please Read
Thread-Index: AdQe1R/3fSEUM3AFTMCzBohHfWlqdQ==
Disposition-Notification-To: Julia Vickery <jvickery@midland.edu>
Return-Receipt-To: <jvickery@midland.edu>
Date: Wed, 18 Jul 2018 20:23:26 +0000
Message-ID: <82eeceb05ad944de89c94a6684b533cc@EXCH03.internal.midland.edu>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
x-originating-ip: [192.168.15.28]
Content-Type: multipart/mixed;
        boundary="_007_82eeceb05ad944de89c94a6684b533ccEXCH03internalmidlanded_"
MIME-Version: 1.0
```

EXHIBIT 5

# *GOOD SPORTS, INC.*

Title IX and Gender Equity Specialists

## AGREEMENT

This Agreement is made this **13th** day of **February** 2018, by and between Midland College in Midland, Texas, and Good Sports, Inc., Title IX and Gender Equity Specialists, a Virginia Corporation, hereinafter "Consultant." The parties herein agree as follows:

### SERVICES TO BE PROVIDED

Equity Consultant Services.

Consultant will oversee and monitor the implementation of the Settlement Agreement in the case of Kiani Telles, Elizabeth Chastain, and Chrystine Kistner v. Midland College, Civil Action No. 7:17-cv-00083-RAJ. The Settlement Agreement addresses issues concerning the intercollegiate athletics program at Midland College, and specifically, improvements for the softball program. The oversight, monitoring, and any requested consultations concern compliance with the regulation implementing Title IX of the Education Amendments of 1972 at 34 C.F.R. § 106.37(c) and § 106.41(c) and the December 11, 1979, Intercollegiate Athletics Policy Interpretation at 44 Fed. Reg. 71413 et seq. (1979). The Title IX regulation and 1979 Policy Interpretation address 13 athletics program components: accommodation of interests and abilities; athletic scholarships; equipment and supplies; scheduling of games and practice times; travel and per diem allowances; tutoring; coaching; locker rooms, practice and competitive facilities; medical and training facilities and services; housing and dining facilities and services; publicity; support services; and recruitment of student-athletes; only some of these components are pertinent to the Settlement Agreement.

### CONDITIONS

Consultant does not provide legal advice. Consultant provides technical assistance concerning compliance with the athletics provisions of the regulation implementing Title IX.

### REPORTS

Consultant may provide written reports if requested and/or as appropriate or necessary in relation to the implementation of the Settlement Agreement.

### TARGET BEGINNING DATE

February 2018. On-site visits may be scheduled if necessary and as mutually agreeable to Midland College and Consultant.

AGREEMENT – MIDLAND COLLEGE and GOOD SPORTS, INC.

**TARGET COMPLETION DATE**

June 2020. The terms of this agreement shall be extended as mutually agreeable to Midland College and Consultant.

**FEES**

Professional time for the Equity Consultant services and production of any written reports is billed at $200.00 per hour.

**OTHER COSTS**

Midland College will reimburse actual costs incurred for transportation, lodging, telephone usage, photocopying, materials, and postage charges. Per diem charges are assessed at a flat rate of $35.00 per day. Mileage is assessed at $.50 per mile.

**ADVANCE DEPOSIT**

There is no advance deposit for services.

**TERMS FOR BALANCE**

Midland College will be billed monthly for services provided and expenses incurred in the preceding month. Payment shall be due thirty days from the issuance of each invoice. After thirty days, any unpaid bill will incur a late fee of 1.5 percent per month.

**SPECIAL PROVISIONS**

Midland College has the right to terminate the assignment at any time upon written notice to Consultant. In such a case, Midland College has no liability for charges beyond those incurred on its behalf through the date when notice of termination is received by Consultant.

Consultant reserves the right to withdraw from the assignment if conditions develop that impair objectivity, independence, integrity, or otherwise interfere with the successful completion of the assignment.

Consultant, and its contractors, if any, shall be in the relation of independent contractors with Midland College and nothing herein shall be construed as designating Consultant as employees or agents of Midland College for any purpose.

Consultant will guard as confidential all information concerning the affairs of Midland College that is gathered during the course of the assignment. Consultant agrees to hold such information in strict confidence and not to disclose it to others, except as required per the Settlement Agreement, and within recognized legal and ethical bounds until Midland College consents to disclosure by Consultant.

*√M B*

AGREEMENT – MIDLAND COLLEGE and GOOD SPORTS, INC.

**NOTICE**

Any notice required to be given under this agreement shall be to:

**TO Midland College:**    Midland College
Midland College, TX  79705

Attn:    Steve Thomas
_____
Name

President
_____
Title


**TO Consultant:**    Good Sports, Inc., Title IX and Gender Equity Specialists
San Diego, California  92150

Attn:    Valerie M. Bonnette
President


**FOR Midland College**

Steve Thomas
_____
Name (type or print)

President
_____
Title

_____
Signature

2/13/18
_____
Date


**FOR Consultant**

Valerie M. Bonnette
President
Good Sports, Inc., Title IX and Gender Equity Specialists

_Valerie M. Bonnette_
_____
Signature

February 9, 2018
_____
Date

3

# VALERIE McMURTRIE BONNETTE

Post Office Box 500505
San Diego, California  92150
(858) 695-9995

## EMPLOYMENT

1994 -
Present
**Private Consultant** – founded Good Sports, Inc., Title IX and Gender Equity Specialists; Good Sports, Inc., provides technical assistance to educational institutions and organizations for compliance with the athletics provisions of Title IX of the Education Amendments of 1972.

Main Services:  Review individual institution's intercollegiate or interscholastic athletics program in same detail as a federal government investigation, identify Title IX compliance concerns, and provide options for resolving each concern identified; advisory consultations analyzing compliance for single Title IX athletics program components (such as participation opportunities, athletic scholarships, facilities); seminars, workshops, and document reviews.

Provide self-evaluation classes for schools and conferences in which participants learn how Title IX works while evaluating their own intercollegiate or interscholastic athletics programs.

1980-94
**Program Analyst** (formerly Equal Opportunity Specialist), Office for Civil Rights (OCR), U.S. Department of Education, Washington, D.C.

Major Duties:  Draft policy, procedures, and technical assistance resource packages for issues under civil rights statutes and regulations prohibiting discrimination on the basis of race, sex, handicap, and age (received numerous Cash Awards for outstanding job performance ratings).

**Major Accomplishments**

Co-Author – OCR's 1990 Title IX Athletics Investigator's Manual
Designed and coordinated OCR's Title IX religious exemption project resolving 200 cases
Coordinated OCR Headquarters' Task Force conducting 74 federal investigations for sex
   discrimination in student health insurance programs (Special Act Award)
Provided on-site technical assistance to colleges and universities regarding compliance with
   Title IX athletics requirements
Conducted federal investigations of institutions alleged to have violated Title IX in their
   intercollegiate and interscholastic athletics programs
Provided technical assistance to national and regional athletics conferences
Trained OCR attorneys and staff on Title IX requirements for athletics programs
Team Member – Special Management Review Program

1977
**Summer Intern**, Office for Civil Rights, Department of Health, Education,  and Welfare, Washington, D.C.

Major Duties:  Draft policies and procedures on Title IX athletics issues; respond to correspondence on race, sex, handicap, and age discrimination issues under OCR's jurisdiction.

1975-76
**Assistant Program Director**, Department of Intramurals, University of Florida, Gainesville, FL

Major Duties – Jointly, with another Assistant:  schedule 300 to 1,000 contests per week; supervise Intramural Office staff, league managers and 100+ officials for 15 intramural leagues.

PAGE 2 – RESUMÉ FOR VALERIE M. BONNETTE
_____

**EDUCATION**

1975-77     University of Florida, Gainesville, Florida
            Master of Arts Physical Education, Emphasis in Educational Administration
            Thesis: "The Compliance of Selected Intercollegiate Athletics Programs to Title IX"

1971-75     Wilmington College, Wilmington, Ohio
            Bachelor of Arts, History and Physical Education


**Participation Experience/Positions/Awards/Features/Miscellaneous**

Inducted into Wilmington College Athletic Hall of Fame – 2001

Appearance on ESPN – "On the Basis of Sex: The Battle of Title IX" originally aired June 22, 2002

"Bonnette 'The Title IX Lady Who Makes Sense,'" subject of feature article written by Tom Cushman, Sports Columnist, The San Diego Union-Tribune, January 20, 1999

NCAA Gender Equity Task Force: April 15, 1992, request from NCAA Executive Director Richard D. Schultz to serve on NCAA's Gender Equity Task Force as consultant representing the Office for Civil Rights, U.S. Department of Education

Guy Mason Fastpitch Softball League, Washington, D.C. (most teams, semi-professional skill level) (1983-86) (Named to All-Star Team 1985)

University of Florida – Assistant Coach, Intercollegiate Women's Softball Team (1976)

Wilmington College, Ohio – Special Award – Women's Athletics (1975)
College Participation: (only two intercollegiate sports offered for women 1971-75)
    Volleyball, Team Captain
    Basketball, Team Captain
    Only woman who participated in Men's Intramural Softball League
    Declined coach's request to participate on Men's Intercollegiate Junior Varsity Soccer Team
        (no soccer team experience)
    Participated in intramural squash and tennis; served as lifeguard at college pool

Michigan-Ohio League (semi-professional women's fastpitch softball league) (1971-72)
    Named to State of Michigan All-Star Team (1972)

President, Girls' Athletic Club, Huron High School, Ann Arbor, MI (1970-71)  High School Participation:
    Basketball
    Field Hockey
    Softball
    Volleyball

Named Most Athletic Female Student (Coaches' Selection) – Forsythe Junior High, Ann Arbor, MI (participated on track team)

Named Outstanding Female Athlete – Borel Junior High School, San Mateo, CA

_____

**PRESENTATIONS**

University of Michigan – Sharp Center for Women and Girls, Title IX at 40, May 10, 2012

NCAA National Title IX Seminars – April 2009, San Diego, CA

North Coast Athletic Conference – January 2008

Girls and Women Rock: Celebrating 35 Years of Sport and Title IX Symposium, Cleveland, OH, March 2007

NCAA National Title IX Seminars – April 28-29, 2003, La Jolla, CA; May 9-10, 2002, Crystal City, VA; May 15-16, 2001, Indianapolis

Michigan High School Athletic Association, February 4-5, 2001, Lansing, MI – Women in Sports Leadership Conference, featured speaker

NCAA National Title IX Seminars – May 16-17, 2000, Indianapolis; May 11-12, 1999, Chicago

Guest Lecturer – Glenn E. Robinson Lecture Guest Speaker, April 20, 1999, South Dakota State University

Panelist, Virginia State Bar 60th Annual Meeting, Virginia Beach, June 20, 1998.

NCAA Regional Compliance Seminars – May 7-8, 1998, Anaheim; May 28-29, 1998, Dallas; June 11-12, 1998, Pittsburgh

NCAA National Title IX Seminar – May 12-13, 1998, Chicago

NCAA National Convention – January 10-14, 1998, Atlanta

NCAA Regional Compliance Seminars – May 1-2, 1997, Baltimore; May 29-30, 1997, San Francisco; April 24-25, 1997, New Orleans

NCAA National Title IX Seminars – April 22-23, 1997, Atlanta; May 12-13, 1997, Kansas City

NCAA Regional Compliance Seminars – May 8-10, 1996, St. Louis; May 22-24, 1996, Boston; May 29-31, 1996, Newport Beach, CA

NCAA National Title IX Seminars – April 11-12, 1996, San Francisco; April 29-30, 1996, Boston

NCAA National Title IX Seminars – April 10-11, 1995, Dallas; April 20-21, 1995, Baltimore

Women in Higher Education in Tennessee – October 6-7, 1994, University of Tennessee at Chattanooga

Big Eight Conference – February 17, 1993, Kansas City; as OCR Program Analyst, provided seminar covering compliance requirements for all 13 Title IX program components for ADs, SWAs, and FARs.

Ohio Valley Conference – June 4, 1992, Nashville; as OCR Program Analyst, provided seminar covering requirements for all 13 Title IX program components for ADs and SWAs.

_____

National Fastpitch Coaches' Association – November 1, 1992, Palm Springs; as OCR Program Analyst, provided two hour question and answer session on Title IX athletics for the NFCA national convention.

OCR Regional Office Chief Attorneys and Division Directors – January 1991, Kansas City; provided workshop on Title IX athletics for Division Directors and OCR's Chief Regional Attorneys.

Women's Basketball Coaches Association – March 1991, New Orleans, NCAA Division I Women's Final Four; speech on Title IX requirements.

Briefing – 22 Representatives of National Education and Athletics Organizations – May 31, 1990, Washington, D.C.; explained Title IX athletics requirements as outlined in OCR's Title IX Athletics Investigator's Manual.

Not Listed – seminars and presentations delivered to clients of Good Sports, Inc., including NCAA Division I-A Athletics Conferences, Presidents and Chancellors; NCAA Division II and III, and Community College Athletics Conferences; Seminars for statewide High School Athletic Directors, county-wide Superintendents, Principals, and Athletic Directors; individual institutions.


**PUBLICATIONS**

Author – "Title IX and Interscholastic Athletics:  How It All Works – In Plain English" – A self-evaluation manual and desk reference for high schools and middle schools.

Author – "Title IX," a chapter of "The Handbook of College Athletics and Recreation Administration" published in 2012, the Jossey-Bass Higher and Adult Education Series

Author – "Title IX and Intercollegiate Athletics:  How It All Works – In Plain English" – A self-evaluation manual and desk reference for colleges and universities.

Editor and Publisher – "Title IX Athletics Q & A," a periodical published from 2000 to 2003 providing answers to Title IX athletics questions from educators, parents and students.

Author – "Title IX Athletics Briefing Book" for the U.S. Secretary of Education's Commission on Opportunity in Athletics.

Author – "Title IX Basics," a section of the National Collegiate Athletic Association's publication "Achieving Gender Equity."

Guest Editorial – NCAA News (June 8, 1998) "Schools Should Use Flexibility of Title IX."

"Title IX at 25," written for the National Fastpitch Coaches Association and published in their June 1997 issue of "Fastpitch Delivery."



EXHIBIT 6

TO ORDER COPIES OF ANY DOCUMENTS LISTED
BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 06/28/2018**

**Current Date:** 8/24/2018
**Source:**        U.S. District Court, Southern District of California (San Diego)

| | |
|---|---|
| **Court:** | U.S. District Court, Southern District of California (San Diego) |
| **Case Title:** | Ollier et al v. Sweetwater Union High School District et al |
| **Case:** | 3:07-CV-00714 |
| **Judge:** | Judge M. James Lorenz |
| **Date Filed:** | 04/19/2007 |
| **Other Dockets:** | Case in other court: USCA, 12-56348 |
| **Date Closed/Terminated:** | 10/05/2015 |
| **Case Status:** | CLOSED, BIFURCATE, PROTO, TRIAL |

### CASE INFORMATION

| | |
|---|---|
| **Case Number:** | 3:07CV00714 |
| **Referred To:** | Magistrate Judge Jill L. Burkhardt |
| **Jury Demand:** | None |
| **Nature of Suit:** | Civil Rights: Other Civil Rights (440) |
| **Key Nature of Suit:** | Civil Rights; Other Federal Civil Rights (110.45) |
| **Key Nature of Suit:** | Class Action (115) |
| **Jurisdiction:** | Federal Question |
| **Cause:** | 42 USC 1983cv Civil Rights Act - Civil Action for Deprivation of Rights |

### PARTICIPANT INFORMATION

---

#### Veronica Ollier

---

| | |
|---|---|
| **Party Description:** | Individually and on behalf of all those similarly situated |
| **Type:** | Plaintiff |
| **Attorney:** | Elizabeth Kristen |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Legal Aid at Work |
| **Attorney Address:** | 180 Montgomery Street |
| | Suite 600 |
| | San Francisco, CA 94104-4244 |
| **Attorney Phone:** | 415-864-8848 |
| **Attorney Fax:** | 415-593-0096 |
| **Email Address:** | ekristen@legalaidatwork.org |
| **Attorney:** | Erin Cranman Witkow |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Manatt Phelps and Phillips |
| **Attorney Address:** | 11355 West Olympic Boulevard |
| | Los Angeles, CA 90064 |
| **Attorney Phone:** | 310-312-4176 |
| **Attorney Fax:** | 310-312-4224 |
| **Email Address:** | ewitkow@manatt.com |
| **Attorney:** | Jeeyung Cacilia Kim |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Legal Aid at Work |

| | |
|---|---|
| | San Diego, CA 92106 |
| **Attorney Phone:** | 619-232-3122 |
| **Attorney Fax:** | 619-232-3264 |
| **Email Address:** | disrael@sashlaw.com |
| **Attorney:** | Gil Abed |
| **Firm Name:** | Stutz Artiano Shinoff and Holtz |
| **Attorney Address:** | 2488 Historic Decatur Road |
| | Suite 200 |
| | San Diego, CA 92106 |
| **Attorney Phone:** | 619-232-3122 |
| **Attorney Fax:** | 619-232-3264 |
| **Email Address:** | gabed@stutzartiano.com |
| **Attorney:** | Jennifer Carbuccia |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Attorney Address:** | Sweetwater Union High School District |
| | 1130 Fifth Avenue |
| | Chula Vista, CA 91911 |
| **Attorney Phone:** | 619-407-4940 |
| **Attorney Fax:** | 619-498-1997 |
| **Email Address:** | jennifer.carbuccia@sweetwaterschools.org |
| **Attorney:** | Patrice Coady Nagle |
| **Firm Name:** | Fisher & Phillips |
| **Attorney Address:** | 4747 Executive Drive |
| | Suite 1000 |
| | San Diego, CA 92121 |
| **Attorney Phone:** | 858-597-9600 |
| **Attorney Fax:** | 858-597-9601 |
| **Email Address:** | pnagle@fisherphillips.com |
| **Attorney:** | Paul Vincent Carelli, IV |
| **Attorney Address:** | Artiano Shinoff |
| | 2488 Historic Decatur Road |
| | Suite 200 |
| | San Diego, CA 92106 |
| **Attorney Phone:** | 619-232-3122 |
| **Attorney Fax:** | 619-232-3264 |
| **Email Address:** | pcarelli@stutzartiano.com |

## CALENDAR INFORMATION
View Calendar Information

## DOCKET PROCEEDINGS (335)

| Entry #: | Date: | Description: | |
|---|---|---|---|
| 336 | 06/27/2018 | STATUS REPORT June 2018 Annual Compliance Report by Jim Cartmill, Jesus M Gandara, Jaime Mercado, Russell Moore, Pearl Quinones, Arlie N Ricasa, Greg R Sandoval, Sweetwater Union High School District, Earl Weins. (Attachments: # 1 Declaration, # 2 Proof of Service, # 3 Appendix Index of Exhibits, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 | View Batch Download |

Exhibit M, # 17 Exhibit N, # 18
Exhibit O, # 19 Exhibit P, # 20
Exhibit Q, # 21 Exhibit R, # 22
Exhibit S, # 23 Exhibit T, # 24
Exhibit U, # 25 Exhibit V, # 26
Exhibit W, # 27 Exhibit X, # 28
Exhibit Y, # 29 Exhibit Z, # 30
Exhibit AA, # 31 Exhibit BB, # 32
Exhibit CC, # 33 Exhibit DD, # 34
Exhibit EE, # 35 Exhibit FF, # 36
Exhibit GG, # 37 Exhibit HH, #
38 Exhibit II, # 39 Exhibit JJ, # 40
Exhibit KK, # 41 Exhibit LL, # 42
Exhibit MM, # 43 Exhibit NN, # 44
Exhibit OO)(Carbuccia, Jennifer)
(Entered: 06/27/2018)

| 335 | 03/15/2018 | STATUS REPORT March 2018 | ViewBatch Download |

STATUS REPORT March 2018
Compliance Report by Jim
Cartmill, Jesus M Gandara,
Jaime Mercado, Russell Moore,
Pearl Quinones, Arlie N Ricasa,
Greg R Sandoval, Sweetwater
Union High School District,
Earl Weins. (Attachments: # 1
Declaration, # 2 Proof of Service,
# 3 Appendix Index of Exhibits,
# 4 Exhibit A, # 5 Exhibit B, #
6 Exhibit C, # 7 Exhibit D, # 8
Exhibit E, # 9 Exhibit F, # 10
Exhibit G, # 11 Exhibit H, # 12
Exhibit I, # 13 Exhibit J, # 14
Exhibit K, # 15 Exhibit L, # 16
Exhibit M, # 17 Exhibit N, # 18
Exhibit O, # 19 Exhibit P, # 20
Exhibit Q, # 21 Exhibit R, # 22
Exhibit S, # 23 Exhibit T, # 24
Exhibit U, # 25 Exhibit V, # 26
Exhibit W, # 27 Exhibit X, # 28
Exhibit Y, # 29 Exhibit Z, # 30
Exhibit AA, # 31 Exhibit BB, # 32
Exhibit CC, # 33 Exhibit DD, # 34
Exhibit EE, # 35 Exhibit FF, # 36
Exhibit GG, # 37 Exhibit HH, #
38 Exhibit II, # 39 Exhibit JJ, # 40
Exhibit KK, # 41 Exhibit LL, # 42
Exhibit MM, # 43 Exhibit NN, #
44 Exhibit OO, # 45 Exhibit PP, #
46 Exhibit QQ, # 47 Exhibit RR,
# 48 Exhibit SS, # 49 Exhibit TT)
(Carbuccia, Jennifer) (anh).
(Entered: 03/15/2018)

| 257 | 04/15/2014 | Notice of Document Discrepancies and Order Thereon by Judge M. James Lorenz: Accepting Document, from Defendant Sweetwater Union High School District, re 256 Response. Non-compliance with local rule(s), ECF 2(f): RE: Declaration of Allison Capozzoli - improper signature, RE: Main Document - Signature name does not match that of filer. IT IS HEREBY ORDERED: The document is accepted despite the discrepancy noted above. Any further non-compliant documents may be stricken from the record. Signed by Judge M. James Lorenz on 4/15/2014.(sjt) (Entered: 04/15/2014) | ViewBatch Download |
| 256 | 04/14/2014 | RESPONSE re 249 Order on Motion to Enforce Judgment, filed by Sweetwater Union High School District. (Attachments: # 1 Exhibit Exhibit 1 to Defendant SUHSD's Statement of Cause to Show It Should Not be Held in Contempt, # 2 Declaration Declaration of Allison Capozzoli in Support of Defendant SUHSD's Statement of Cause to Show It Should Not be Held in Contempt, # 3 Declaration Declaration of Hon. Herbert Hoffman, Ret. In Support of Defendant SUHSD's Statement of Cause to Show It Should Not be Held in Contempt, # 4 Declaration Declaration of William McLaughlin in Support of Defendant SUHSD's Statement of Cause to Show It Should Not be Held in Contempt, # 5 Exhibit Index of Exhibits to Declaration of William McLaughlin in Support of Defendant SUHSD's Statement of Cause to Show It Should Not be Held in Contempt, # 6 Exhibit Exhibit A to Declaration of William McLaughlin, # 7 Exhibit Exhibit B to Declaration of William McLaughlin, # 8 Exhibit Exhibit C to Declaration of William McLaughlin, # 9 Exhibit Exhibit D to Declaration of William McLaughlin, # 10 Exhibit Exhibit E to Declaration of William McLaughlin, # 11 Exhibit Exhibit F to Declaration of William McLaughlin, # 12 Exhibit Exhibit G to Declaration of William McLaughlin, # 13 Exhibit Exhibit H to Declaration of William McLaughlin, # 14 Exhibit Exhibit I to | ViewBatch Download |

| | | | |
|---|---|---|---|
| | | Redaction Request Statement due to Court Reporter/Transcriber 9/11/2012. Redacted Transcript Deadline set for 9/21/2012. Release of Transcript Restriction set for 11/19/2012. (akr) (Entered: 08/21/2012) | |
| 208 | 08/17/2012 | TRANSCRIPT DESIGNATION AND ORDERING FORM by Jim Cartmill, Jesus M Gandara, Jaime Mercado, Russell Moore, Pearl Quinones, Arlie N Ricasa, Greg R Sandoval, Sweetwater Union High School District, Earl Weins for proceedings held on 12/14/09, 4/26/10, 9/14/10, 9/15/10, 9/16/10, 9/17/10, 9/21/10, 9/22/10, 9/23/10, 10/13/10, 10/14/10, 10/15/10 re 205 Notice of Appeal. (Attachments: # 1 Proof of Service)(Carelli, Paul). (akr). (Entered: 08/17/2012) | View Batch Download |
| 207 | 07/23/2012 | USCA Time Schedule Order as to 205 Notice of Appeal, filed by Jim Cartmill, Jesus M Gandara, Pearl Quinones, Russell Moore, Jaime Mercado, Sweetwater Union High School District, Earl Weins, Arlie N Ricasa, Greg R Sandoval. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court (see attached), provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 8/20/2012 (see Ninth Circuit Rule 10-3.1); Due date for filing of transcripts in US District Court is 9/18/2012.) (cc: Court Reporter). (Attachments: # 1 Transcript Designation and Ordering Form). (akr) (Entered: 07/23/2012) | View Batch Download |
| 206 | 07/23/2012 | USCA Case Number 12-56348 for 205 Notice of Appeal, filed by Jim Cartmill, Jesus M Gandara, Pearl Quinones, Russell Moore, Jaime Mercado, Sweetwater Union High School District, Earl Weins, Arlie N Ricasa, Greg R Sandoval. (akr) (Entered: 07/23/2012) | View Batch Download |
| 205 | 07/20/2012 | NOTICE OF APPEAL as to 204 Order denying Motion for Amended, Additional or New Findings, 193 Findings of Fact & Conclusions of Law, by Jim Cartmill, Jesus M Gandara, Jaime | View Batch Download |

| | | (Kim, Jeeyung) (srm). (Entered: 11/15/2010) | |
|---|---|---|---|
| 182 | 11/15/2010 | TRIAL BRIEF re: Connect-Ed Phone System by Jim Cartmill, Jesus M Gandara, Jaime Mercado, Russell Moore, Pearl Quinones, Arlie N Ricasa, Greg R Sandoval, Sweetwater Union High School District, Earl Weins. (Carelli, Paul) (srm). (Entered: 11/15/2010) | ViewBatch Download |
| 181 | 10/22/2010 | EXHIBIT LIST for Defendants for bench trial.(smv) (Main Document 181 replaced on 11/2/2010 to correct exhibit 966 description) (smv). (Entered: 10/22/2010) | ViewBatch Download |
| 180 | 10/22/2010 | EXHIBIT LIST for Plainitffs for bench trial. (smv) (Entered: 10/22/2010) | ViewBatch Download |
| 179 | 10/22/2010 | WITNESS LIST for bench trial. (smv) (Entered: 10/22/2010) | ViewBatch Download |
| 178 | 10/15/2010 | Plaintiff's Notice of Lodging Deposition Transcripts by Elizabeth Kristen. (srm) (cap). (Entered: 10/18/2010) | ViewBatch Download |
| 177 | 10/15/2010 | Minute Entry for proceedings held before Judge M. James Lorenz: Bench Trial completed on 10/15/2010. Day of Trial Ten. Swore witnesses. Exhibits marked/ received. Miriam Duggan, Jesus Gandara, Mercedes Lopez, and Jerry Schneipp called, sworn, and testified. Exhibits 606, 611, 612, 645, 647, 657, 658, 659, 663, 664, 865, 881, 941, 943, 965, and 997 identified/received. Exhibits 684, 886, 900, 901, and 966 conditionally entered. Exhibits 428, 429, 747, 940, and 942 identified only. Previously conditionally entered exhibits 443, 452, 657 and 659 received. Site inpection to take place on 10/19/2010 at 1:00 PM. Findings of fact to be filed by 12/13/2010. Court to issue order. (Court Reporter Jeannette Hill). (Plaintiff Attorney Elizabeth Kristen, Vicky Barker, and Cacilia Kim). (Defendant Attorney Daniel Shinoff, Gil Abed, and Patricia Coady). (smv) (Entered: 10/15/2010) | Send Runner to Court |
| 176 | 10/15/2010 | NOTICE by Amanda Hernandez, Arianna Hernandez, Veronica Ollier, Maritza Rangel, Naudia Rangel -- Notice of Lodging Marked Discovery, Trial Exhibits 76-84 (Witkow, Erin) Modified on 10/18/2010 Attorney notified | ViewBatch Download |

Case 7:17-cv-00083-DC   Document 30   Filed 09/04/18   Page 52 of 52

| 2 | 04/24/2007 | Summons Issued as to Sweetwater Union High School District, Arlie N Ricasa, Pearl Quinones, Jim Cartmill, Jaime Mercado, Greg R Sandoval, Jesus M Gandara, Earl Weins, Russell Moore. (mjj, ) (mam). (Entered: 04/24/2007) | ViewBatch Download |
|---|---|---|---|
| 1 | 04/19/2007 | COMPLAINT, class action, for Injunctive and Declaratory Releif against all defendants (Filing fee paid $350.00, Receipt# 137313), filed by plaintiffs Arianna Hernandez, Veronica Ollier, Naudia Rangel, Maritza Rangel, and Amanda Hernandez.(lao, )(bar, ). (Entered: 04/20/2007) | ViewBatch Download |

TO ORDER COPIES OF ANY DOCUMENTS LISTED
ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.